STATE OF IOWA, Appellee, v. HENRY THOMAS, Appellant.

**Criminal law:** EVIDENCE: SCOPE OF CROSS-EXAMINATION: DISCRETION.
1 The scope of cross-examination is largely a matter of discretion with the trial court and unless its rulings limiting the examination are arbitrary and result in prejudice they will not be disturbed on appeal.

**Same:** MURDER: EVIDENCE. On a prosecution for murder the court
2 may permit a showing of the deceased's previous history; and refusal to permit mere repetition of testimony previously given is not prejudicial error.

**Same:** SELF-DEFENSE: INSTRUCTION. An instruction that one acting
3 in self-defense may use such means as he deems necessary when acting as a reasonably prudent person, to the extent of killing his assailant; but before he will be excused for using a weapon resulting in death it must appear that his danger was so imminent that to save his life it was necessary to kill his assailant; that when one acting as a reasonably prudent man believes that his life is in danger he is justified in using such force as an ordinary prudent person would in a like situation probably exercise, and that it must appear beyond reasonable doubt that the accused killed his assailant and did so in necessary self-defense is a sufficient submission of the issue of self-defense.

**Same:** EVIDENCE OF ACCUSED: CREDIBILITY. An accused may right-
4 fully testify in his own behalf but the credibility of his evidence

is a matter exclusively for the jury; and in weighing his evidence it may consider his manner of testifying, the reasonableness of his testimony and his interest in the result of the case. The jury is not required to blindly accept his evidence as true but is to determine whether it is in fact true and made in good faith or only for the purpose of avoiding conviction.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

WEDNESDAY, JULY 5, 1911.

INDICTMENT for murder in the first degree. Trial to a jury, verdict of guilty, and judgment of imprisonment for life. Defendant appeals.—*Affirmed.*

*J. B. Rush* and *Thomas L. Sellers,* for appellant.

*George Cosson,* Attorney-General, and *Henry E. Sampson,* Special Counsel, for the State.

DEEMER, J.—Defendant and deceased, one Harry L. Cook, were in the employ of the Turner Improvement Company, which, on the 18th day of June, 1910, was engaged as a contractor in paving what is known as East Fourth Street in the city of Des Moines. Cook was acting as timekeeper for the company, and defendant, a colored man, was working for the company as an ordinary day laborer. On the evening of the 17th of June, defendant went to the deceased and made claim of some time coming to him. This was denied by Cook, and deceased left him (Cook). On the next morning, somewhere between eight and nine o'clock, defendant and two other colored men were seen in conference, and defendant was heard to say that he was going down to "the works" and have his pay. The men were apparently excited, and defendant was advised by a policeman, who was at hand, to stop drinking and to

keep away from the works, where he might cause trouble. To this defendant responded, "By God, I am going to have my money anyway." Shortly thereafter defendant with his companions appeared at the works, and defendant again asked Cook "for his time." Cook then asked him how much he thought he was short, to which defendant responded that he did not know, but he knew he was short. Cook then asked him how he knew, to which he responded, "Well, because, by God, I know I am short." The conversation continued for some time; defendant becoming boisterous and using violent, profane, and abusive language toward Cook. At one time defendant said, "I will have it, or I will get you." Finally Cook was seen to throw his hand to his side, and was heard to say, "He got me! Yes; he got me with a knife right between the ribs."

After stabbing Cook, defendant stood a few moments, knife in hand, and then started walking rapidly in an easterly direction. Cook called for some one to stop him. Thereupon one Eaton started after defendant, and he (defendant) turned and began to throw stones at Eaton. Catching up with defendant, Eaton struck him with his fist and kicked the knife, which he was still holding, out of his hand. A policeman then appeared upon the scene and took defendant in custody. While in charge of the policeman, defendant heard some one say that Cook was dying, and fearing, as he said, a mob, he broke away from the officer and made his escape, going to South Des Moines, where after an exciting chase he was captured in a patch of weeds in the south part of the city and taken to police headquarters. Cook died from the effects of his wound some time the next day. The knife had penetrated the lung tissue, and had passed through the diaphragm into the liver; the wound being something like three and one-half inches long. Defendant claimed on the trial that he was acting in self-defense. The jury found him guilty of

murder in the first degree, and sentence was passed accordingly.

For a reversal defendant relies upon many grounds, and the briefs presented by his counsel (which are typewritten), because of failure to comply with our rules, are overburdened with alleged errors presented in such a manner that it· is difficult to arrive at the exact propositions relied upon. In general it may be said that complaint is made of the rulings· on the admission and rejection of testimony, of some of the instructions, ·and finally it is insisted that the verdict is without support in the evidence. We shall not notice all the points made, for many of them are ruled by previous cases, and are not debatable.

I. Turning first to the rulings on testimony. Many complaints are made because of undue limitation placed upon the cross-examination of some of the state's witnesses. This matter is so largely within the discretion of the trial court that reversals are few because thereof. It must be shown, before error can be predicated upon such rulings, that they were arbitrary or ʼunfair, and resulted in prejudice to defendant. That does not appear here.

1. CRIMINAL LAW: evidence: scope of cross-examination: ·discretion.

Something of the previous history of the deceased was shown by the state, over the defendant's objections. In this there was no error. Counsel for defendant insisted upon many repetitions from the witnesses of their testimony, and upon this ground many objections were interposed by the county attorney, which were sustained by the trial court. In no instance do we find any error prejudicial to defendant. The matter sought to be shown had already been brought out, and nothing could be gained by repetition, save a useless expenditure of time.

2. SAME: murder: evidence.

Defendant claimed that after some words had passed between him and Cook, at the time of the fatal difficulty, Cook assaulted him with a shovel; that he (defendant)

backed away as far as he could, in the meantime getting out his knife, and that finally to save his life or his person from great bodily harm he stabbed deceased. This was denied by some of the state's witnesses, and thus arose the principal issue in the case. When arrested defendant had some wounds about his head which he claimed were made by the shovel, but the state contended that these were made by a billy in the hands of an officer, or officers, when the arrest was being made. Testimony pro and con with reference to these disputed matters was fully developed, and, while some rulings made by the trial court were doubtless erroneous, they were either cured by others, or were without prejudice to defendant.

II. Instructions ten and twelve, reading as follows, are complained of:

(10) A defense offered in this case is that of self-defense. A man acting in necessary self-defense may use and adopt such means as he may deem necessary acting as a reasonably prudent person would act under the circumstances and even to the extent of doing great bodily injury, or to killing his assailant. If you find from all the evidence in this case that the injury done and committed upon the person of Harry L. Cook which caused his death, if you find it did cause his death, was done in necessary self-defense, then the law does not impute any crime, and in such case the defendant will be entitled to an acquittal. The burden is upon the prosecution to show, beyond a reasonable doubt not only that the defendant committed the act complained of and inflicted the injury upon the said Harry L. Cook which caused his death, as charged in the indictment, but also the further fact, beyond a reasonable doubt, that said injury was not inflicted in necessary self-defense. Before a person can be excused from using a dangerous and deadly weapon in a dangerous manner that might, or does, result in great bodily injury to or the death of an assailant, it must appear to the defendant that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the use of such

3. SAME:
self-defense:
instruction.

·dangerous and deadly weapon in. a dangerous and deadly manner was absolutely necessary, and it must appear that the person upon whom such weapon was used was the assailant, and that the defendant was really and in good faith endeavoring to decline any further struggle before . the blow in question was given. If the defendant was assaulted by the said Harry L. Cook, he had the right to repel the attack, using sufficient force for that purpose; but, if the defendant was not reduced to such apparent extremity or danger as reasonably appeared to him to render it absolutely necessary to use a dangerous and deadly weapon to save his own life, or to prevent his sustaining great bodily harm, then you can not find that the acts of the defendant in so using such dangerous and deadly weapon in a dangerous manner, if he did so use it, were committed in self-defense. Where a person assaulted, acting as a reasonably prudent and cautious man, believes that his assailant is about to take his life, or inflict upon him ·a great bodily injury, he is not required to make nice ·calculations and draw nice distinctions as to just how much force he may use to shield himself from danger, but he is justified in using such force as an ordinarily prudent and cautious man, acting upon appearances, would in a like situation probably exercise. Where a person is assaulted by another, it is the duty of' the person so assaulted to retreat, if retreat is safely open to him, before he can justify the use of a dangerous and deadly weapon in a dangerous manner upon his assailant. If it is apparent that the danger which seems to threaten him can be averted or prevented by any other means apparently within his power, he is not justified in adopting or using a dangerous and deadly weapon in a dangerous manner upon his assailant.

(12)     The law gives persons accused of crime the right to testify in their own behalf, but their credibility and the weight to be given to their testimony are matters exclusively for the jury. Therefore, in weighing the testimony of the defendant in this case, you have the right to take into consideration his. manner of testifying, the reasonableness or unreasonableness of his account of the transaction, and the interest in the result ·of the case to

4. SAME: evidence of accused: credibility.

him, as affecting his credibility. You are not required to receive blindly the testimony of such accused person as true; but you are to consider whether it is true and made in good faith, or only for the purpose of avoiding conviction.

Such instructions have so many times been approved by this court that nothing need be done, save to cite a few cases in support thereof. *Vide, State v. Thompson,* 9 Iowa, 188; *State v. Warner,* 100 Iowa, 260; *State v. Crawford,* 66 Iowa, 318. The last-cited case fully sustains the tenth instruction.

III. Although there is a decided conflict in the testimony, the verdict has sufficient support, and we are not justified in interfering therewith. Defendant was ably defended, and had every advantage to which he was in law entitled. A jury has found him guilty, and that he was not acting in self-defense. If he was not so acting, then clearly he was, under the state's testimony, guilty of murder in the first degree.

No prejudicial error appears, and the judgment must be, and it is, *affirmed.*