JULIA LANG, Appellee, v. MARSHALLTOWN LIGHT, POWER, AND RAILWAY COMPANY, Appellant.

**EVIDENCE:** Interpreting X-Ray. An expert witness may not tes-
1    tify what an X-ray photograph shows, even though objector's own witness had so testified, but without objection.

**WITNESSES:** Undue Limitation on Examination. Unduly limiting
2    examination on matters bearing on the interest of the witness in the pending action is not necessarily reversible error. So held as to whether the witness himself had an action pending which grew out of the accident in question.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, Judge.

JANUARY 17, 1919.

REHEARING DENIED APRIL 4, 1919.

ACTION to recover damages for personal injury. There was a trial to a jury, verdict and judgment for $5,000 for plaintiff, and defendant appeals.—*Affirmed.*

*Hasner & Hasner, Binford & Farber,* and *Edwards, Longley, Ransier & Smith,* for appellant.

*Bradford & Johnson* and *U. S. Alderman,* for appellee.

PRESTON, J.—This case has been here before. *Lang v.*

*Marshalltown L., P. & R. Co.*, 166 Iowa 548. The opinion there states the nature of the case, and we shall not repeat. Twenty-three errors are assigned. They relate, for the most part, to rulings of the court in admitting and excluding evidence, and the alleged restriction of cross-examination of plaintiff's witnesses by defendant. It is also claimed that the trial judge made improper remarks, and that counsel for appellee, during the trial, were guilty of improper conduct in their remarks concerning counsel for appellant, and of improper argument to the jury concerning inefficiency of defendant's employee, the 17-year old conductor in charge of the car; improper questions asked witnesses, and the like. Complaint is also made of the refusal of the trial court to give an instruction requested by appellant, in which the court was asked to withdraw from the consideration of the jury certain alleged injuries to plaintiff, which were alleged in the petition, for the reason that it is contended by appellant there was no evidence in the case to show that such injuries existed. These have reference to injuries to the spinal cord and the nerves radiating therefrom, the alleged injuries to the ligaments of the neck, muscles of the left side, ribs, or the articulation and connection with the spinal column, and the like. It would not be practicable to discuss all the assignments in detail. Counsel for appellant say in argument that the questions asked and the objections are so numerous that it is practically impossible to set them out at length, and in each particular.

1. We shall attempt to cover those which seem to be of minor importance as briefly as may be, and in a general way, and notice more particularly those which seem to be more important. As said, this was the second trial of the case. After reversal in this court, the record shows, and it is so stated in argument, that this last trial was hotly contested by the several attorneys of ability and determina-

tion. There was naturally more or less sparring between counsel on both sides, and it may be that the trial court, under such circumstances, was not, at all times, as suave as he would have been under other circumstances. After an examination of the record, it is our conclusion that, as to these claims, the defendant had a fair trial, and has no just cause of complaint.

2. As to the appellant's offered instruction, before referred to, the argument is very brief. By the court's instruction No. 3, the trial court did say to the jury that, as to some of the alleged injuries, there was no evidence, and such were withdrawn from the consideration of the jury. As to others, there was evidence. Furthermore, by Instructions Nos. 10 and 11, the court left it to the jury to say, from the evidence, what injuries plaintiff proximately suffered by reason of the negligence of the defendant, as the natural result thereof, and the extent of her injuries and the damages resulting therefrom. We think there was no error at this point.

3. As to the alleged restriction of cross-examination, we think there was no error. With one or two exceptions, which will be noted later, the objections interposed by appellee, that the questions asked were not cross-examination, were properly sustained, or the ruling was within the discretion of the court. The cross-examination was quite extended.

4. Both plaintiff and defendant introduced witnesses who had taken X-ray photographs of portions of plaintiff's person, and the photographs were received in evidence. Plaintiff's witnesses testified, without objection, as to plaintiff's condition, as revealed by the photographs, or in connection therewith. Complaint is made by appellant that the court erred in refusing to allow doctors called by defendant to testify as to what appeared in the skiagraphs. An illustra-

1. EVIDENCE: interpreting X-ray.

tive question asked by defendant of its witnesses is a question asked Doctor Cheshire:

"Q.   State whether or not, Doctor, Exhibit B does or does not show a curvature of the spine, as appears in the negative."

Upon proper objection, the court sustained the objection to this question, whereupon counsel for defendant claimed that, in view of the fact that plaintiff's witnesses gave similar testimony, he was entitled to it; but the court stated that, had there been an objection at that time, the court would have ruled; and counsel for defendant stated that he thought plaintiff was entitled to such evidence, but the court stated he did not agree with counsel. Defendant's three doctors on this subject, Dr. Cheshire, Dr. McGready, and Dr. Johnson, testified at great length in regard to the X-ray photographs. Dr. Cheshire's testimony takes up 25 pages of the abstract. He also testified that he made a personal examination of the plaintiff, at a time prior to the taking of the X-ray photographs, and testified as to the condition of plaintiff's neck and muscles, and so on. These three doctors gave testimony interpreting the X-ray pictures. Appellant cites a number of cases to the proposition that X-ray negatives and photographs, properly verified, are admissible in evidence; and this proposition is not disputed by appellee. Cases are also cited by appellant, holding that it is proper for experts to interpret and explain X-ray plates to the jury. Among these is the case of *State v. Matheson,* 142 Iowa 414. They claim, too, that some of the cases hold that a witness may testify as to what the photograph shows. We think the questions asked in the instant case, and as before indicated, and the ruling thereon, are within the ruling of *Elzig v. Bales,* 135 Iowa 208, where it was said:

"As demonstrative evidence, they serve to explain or illustrate and apply the testimony, and are aids to the jury

in comprehending the questions in dispute. No argument is required to show that, when taken for either purpose, they are the best evidence of what appears on them. * * The rule exacting the best evidence applies to the testimony of experts, as well as to that of other witnesses, and we are of the opinion that the court erred in permitting the doctor to testify to what appeared in the skiagraph."

It should have been said that, at one stage of the trial, and after the court had ruled that it was not competent to show what the skiagraph or X-ray photograph showed, counsel for appellee then withdrew their objection, and the court said that he in no wise receded from his interpretation of the law, and that, under the record made by counsel for plaintiff that all objections of that kind are withdrawn, there may be the fullest and extreme illustration made by the experts of these skiagraphs or pictures. This was when the witness Dr. McGready was on the stand, and thereafter, he was further interrogated. The principal objection made by counsel for defendant at that time was that he had discharged his witness, Dr. Cheshire, and he had no way he could get him back at any particular time, and that it would put him to inconvenience. But no request was made for a postponement, or for an opportunity to get the witness back. We think there was no error at this point.

5. It is assigned as error that the court erred in refusing appellant the right to question August Lang (the husband of plaintiff), on cross-examination, as to his having a suit pending in the same court against appellant, based upon the same alleged accident, for injuries to his wife. An objection to such question was sustained, as not cross-examination, the court so stating. The court also said that he was not determining the question of whether or not the defendant might prove that fact, when it came to putting in defendant's evidence. We think that, even though it

2. WITNESSES: undue limitation on examination.

was not cross-examination, it is proper to show the interest of a witness, as bearing upon his credibility. We should have been better satisfied had the court permitted an answer to this question; but, under the record, we are of the opinion that it was without prejudice, and that we would not be justified in reversing the case on this alone. It was shown that this man was the husband of plaintiff, and that, of course, showed his interest to that extent. There was no offer by counsel to show that the husband did have such a suit pending. On the other hand, we infer, from a statement to be set out in a moment, that counsel did not really claim there was such a suit pending, but that he simply wanted to ask whether the husband did or did not have such a case. We ought not to reverse the case and send it back for an answer to this question, and then have him say that he did not have such a suit pending. We feel justified in so holding, in view of a statement by counsel for the defendant, which appears in the record as follows:

"If I was able to show by him that he was also claiming damages in a suit of his own, growing out of this particular incident and accident, it was proper. That was my belief, simply; and I didn't mean to transgress any well-known rule of law. It is possible that I am badly in error upon that point. I say that he had an interest of that kind; it was more or less dependent upon the success of this suit; and I have thought, under the circumstances, that the witness ought to state if he had any such interest."

We conclude that there was no reversible error at this point.

We have noticed the points which seem to require attention; and under the whole record, we think the judgment should be, and it is,—*Affirmed.*

EVANS, GAYNOR, and STEVENS, JJ., concur.