STATE OF IOWA, appellee, v. DUANE A. SAMPSON, appellant.

No. 48944.

(Reported in 79 N.W.2d 210)

460

NOVEMBER 13, 1956.

REHEARING DENIED FEBRUARY 8, 1957.

James A. Lorentzen and Raymond Rosenberg, both of Des Moines, for appellant.

Dayton Countryman, Attorney General, George West, Assistant Attorney General, and Bert A. Bandstra, County Attorney, of Knoxville, for appellee.

PETERSON, J.—Defendant was convicted of the crime of operating a motor vehicle while intoxicated, second offense, as defined in section 321.281, Code of Iowa, 1954. At about 5 p.m. on July 19, 1955, Russell Hasty was driving west on U. S. Highway 92. According to his testimony, a few miles west of Knoxville he saw an automobile approaching. It was the car of the defendant. As defendant approached the Hasty car he suddenly turned from the southerly path of travel to the northerly path. Hasty thought he was driving into a farm driveway. In order to avoid him Hasty drove to the south driving pathway. Defendant then swerved into that pathway and a collision occurred. Both parties were severely injured and were taken to a hospital at Knoxville. Defendant lived at Winterset, and under admission and statements made by him he had taken a drink of whiskey before he left home and later· spent over an hour in a ·tavern where he drank four bottles of ,beer. The highway patrolman, doctor, and nurse attending him, all testified they smelled liquor on his breath. A blood test was taken and the result of the test was his blood contained 186 mgs. of alcohol per 100 cc of whole blood. The doctor testified in his opinion if the alcohol reaches 150 mgs. the person is definitely drunk. The highway patrolman filed information against him. The Grand Jury indicted him. Upon trial he was convicted. He filed a motion

for new trial, which was overruled. He was fined $500 and has appealed.

Appellant argues three grounds as reversible error: 1. The court refused under cross-examination to permit the witness Hasty to testify he had a civil action for damages pending against defendant. 2. The trial court erred in failing to rule as a matter of law on the admissibility of blood test evidence. 3. The court erred in Instruction No. 10, which has reference to the blood test.

██ I. On cross-examination of the witness Hasty, counsel for defendant asked: "Q. Is it true that you have a $55,000 damage suit against Mr. Sampson?" The court sustained an objection by the county attorney that the question was incompetent, irrelevant, immaterial and improper cross-examination. He cautioned the jury not to pay any attention to the question. It would have been advisable and proper if the trial court had overruled the objection, and admitted the answer, as a matter of testing the credibility and possible undue interest of the witness in the case under trial. State v. Christy, 198 Iowa 1302, 201 N.W. 42; State v. Davis, 236 Iowa 740, 19 N.W.2d 655. However, the court has a wide discretion in ruling on the extent of cross-examination. State v. Davis, supra; State v. Thomas, 151 Iowa 572, 132 N.W. 51; State v. Sedig, 235 Iowa 609, 16 N.W.2d 247; State v. Johnson, 215 Iowa 483, 245 N.W. 728. In State v. Thomas, supra, where appellant argued that undue limitation had been placed upon the cross-examination of a State's witness, we said at page 575 of 151 Iowa, page 52 of 132 N.W.: "This matter is so largely within the discretion of the trial court that reversals are few because thereof. It must be shown, before error can be predicated upon such rulings, that they were arbitrary or unfair, and resulted in prejudice to defendant."

█ In State v. Johnson, supra, we stated at page 486 of 215 Iowa, page 730 of 245 N.W.: "We have often held that the permissible range of cross-examination of witnesses for the purpose of affecting their credibility in general rests in the sound discretion of the trial court." (Citations) The question is whether the court abused his discretion, and whether the exclusion of the evidence constituted error prejudicial to the defendant. Hasty was not an important witness as to defendant's

intoxication. His testimony concerning intoxication was only incidental. It pertained to the fact that as he was approaching defendant's car, defendant first suddenly turned north into Hasty's lane and then suddenly turned back into the south lane, resulting in the wreck. Hasty did not file the information, nor was he a witness before the Grand Jury. The intoxication testimony consisted of defendant's own evidence and admissions, the testimony of the highway patrolman, doctor and nurse, and the blood test. With this volume of direct testimony distinct and apart from the testimony of Hasty, we hold defendant was not prejudiced by the action of the court in sustaining objection to the cross-examination.

Appellant cites three Iowa cases in support of this allegation of error. They can all be distinguished from this case. The case of Lang v. Marshalltown Light, Power & Ry. Co., 185 Iowa 940, 944, 170 N.W. 463, 465, is a personal injury action by Mrs. Lang. Her husband was a witness on her behalf. Under cross-examination he was asked whether he had a suit pending for the same injuries to his wife. Objection to the question was sustained. Concerning the question we said: "We think that, even though it was not cross-examination, it is proper to show the interest of a witness, as bearing upon his credibility. We should have been better satisfied had the court permitted an answer to this question; but, under the record, we are of the opinion that it was without prejudice, and that we would not be justified in reversing the case on this alone." The second case cited is Bond v. Lotz, 214 Iowa 683, 243 N.W. 586. Plaintiff called as witnesses Mr. and Mrs. Grover. Under cross-examination they were asked about a slander suit which Mr. Grover had pending against Mrs. Lotz, the defendant. Objections to the question were sustained and we held this was error. However, the principal reason for reversal of the case was the wording of an instruction and the fact that the court permitted the jury to take into consideration repetition of a charge of slander which was not in the petition. Considering the decision as a whole it is evident that the ruling as to cross-examination was a minor matter. The third case cited is State v. Rowe, 238 Iowa 237, 26 N.W.2d 422. Appellant sought to show by cross-examination that the arresting officer and the Justice of the Peace

held a feeling of ill will and hostility toward appellant. Under objection this testimony was excluded. We held it should have been admitted. However, here again there were several errors with reference to instructions and, in fact, on the merits of the case the court held the arrest of defendant was illegal. Again the matter of ruling as to cross-examination sinks into the background. It could properly be said in these two cases, as we said in the Lang case "we would not be justified in reversing the case on this alone."

■■ II. The question of method of admission of the blood test evidence was raised and argued by appellant. He contends the court shall pass, as a matter of law, on whether or not defendant gave consent to the test, and whether or not the condition of defendant was such that his consent was voluntary. It is true the doctor had administered ¼ grain of morphine, but one doctor testified this would not affect the alcoholic content in the blood nor the capacity of defendant to understand the significance of the request for blood test. The doctor, nurse and highway patrolman all testified he had voluntarily given his consent. The trial court overruled objections to admission of the testimony stating he would submit the question to the jury.

We have only passed on this question in one other case. State v. Koenig, 240 Iowa 592, 594, 36 N.W.2d 765, 766. We said: "Defendant contends the court erred in receiving and refusing to strike the evidence of Dr. Hook concerning the taking of the blood sample. One complaint is that defendant was then unconscious. There was considerable evidence he was conscious and made no objection. The court submitted to the jury the question whether defendant was conscious and voluntarily permitted the taking of the blood sample. No exception was taken to this procedure and we need not determine whether this question was for the court or the jury or whether it was necessary that the sample was voluntarily given. It is sufficient that the instruction was not less favorable to defendant than he was entitled to receive."

There is some difference in the situation as between State v. Koenig, supra, and this case. In this case exception was taken to the procedure, both as to exclusion of the testimony and in exceptions to instructions. The general holding of the Koenig

case was that it was not prejudicial to submit to the jury the questions of comprehension and voluntary consent. We hold, under the facts in this case, submitting the question to the jury was permissible and not prejudicial. Appellant places emphasis on the article entitled "Blood Test To Determine Intoxication" by Dean Ladd and Professor Gibson appearing in 24 Iowa Law Review, page 191. It is true there is argument in the article sustaining the theory that the court should pass on admissibility of blood test evidence, but appellant fails to direct attention to the conclusion of Dean Ladd and Professor Gibson, which is a very important part of the article and which appears at page 267, as follows:

"The blood and urine test to determine intoxication has reached a stage of scientific development and reliability where it may serve a most useful purpose in assisting courts and juries to discover the truth in cases in which intoxication is an issue. Although science never stands still and there will be constant improvements in respect to the test, it has passed its experimental period and affords a safe basis of determining intoxication where the alcoholic concentration is in the higher levels. The use of the test will liberate the innocent by the same means that it will convict the guilty. One in an accident under circumstances which might indicate his intoxication should demand the test at once if he had not been drinking or had drunk but little, as it is the sure means of his protection. The courts should have the benefit of the blood test in all cases involving intoxication, and particularly in motor vehicle cases where the public safety is constantly jeopardized. The unwilling or the unconscious driver the same as others should be compelled to submit to the test; there should be no need of consent. The physician-patient privilege should be held inapplicable as the test would rarely if ever be used in medical treatment. These results can be accomplished without the violation of a single statutory or constitutional provision if the courts will be both forward-looking and backward-looking. Historically, the legal inhibitions could not apply to the blood test, and today the modern development of the law is moving in the direction of

wider admissibility of evidence wherever new proof will aid the courts in a just determination of the causes which come before them."

It is a matter of common knowledge, and we can take judicial notice of the fact, that in the last ten years there has been a decided increase in intoxicated driver cases, many of which have resulted in serious personal injuries or death. The excessive use of intoxicating liquor now causes one out of four highway deaths. We do not so hold at this time and in this case, but if this trend continues, the time may come when the courts should adopt the theory of Dean Ladd and Professor Gibson as a matter of preservation of life and limb.

III. The third error urged by appellant is that the court erred in submitting Instruction No. 10. The court instructed concerning the fact that evidence had been introduced as to blood test; that the test was not admissible unless the blood was obtained from defendant voluntarily, without threat or coercion, and without promise of immunity. If the jury found from the evidence that the test was so taken, then it should be given such weight as the jury felt it was entitled to in determining the guilt or innocence of defendant.

Counsel for appellant did not request an instruction covering this matter, but he did file exceptions to the instruction and raised the question in the motion for new trial. In the absence of a request to give a certain instruction under particular circumstances, reversible error cannot be claimed by appellant. State v. Schenk, 236 Iowa 178, 18 N.W.2d 169; State v. Warren, 242 Iowa 1176, 47 N.W.2d 221. A very important matter in connection with this instruction is that taking into consideration the content of the instruction itself, together with all other instructions, no prejudice is created against defendant. Instruction No. 4 contained the usual provisions with reference to defendant being presumed innocent and the burden of overcoming this presumption is on the State, and that defendant's guilt must be established beyond a reasonable doubt. In Instruction No. 6 the court instructed at some length concerning the fact that each element involved in the crime of operating a motor vehicle while intoxicated must be established beyond reasonable

doubt, and if any element was not so established a verdict of not guilty should be returned.

We considered this question in State v. Katz, 241 Iowa 115, 120, 40 N.W.2d 41, 45. We said: "It is a rule too well established to call for a citation of authority that in scrutinizing a trial court's instructions to a jury for possible error the charge must be read in relation to the context. It cannot properly be separated into parts and these treated piecemeal."

See also State v. Heinz, 223 Iowa 1241, 275 N.W. 10, 114 A. L. R. 959; State v. Mart, 237 Iowa 181, 20 N.W.2d 63. Taking into consideration all instructions we hold defendant's rights were fully protected.

IV. In his statement of the case appellant listed twelve alleged errors. However, in both written and oral argument only the three heretofore considered were argued or urged. R. C. P. rule 344(a) (4) (Third), provides: "Errors or propositions not stated or argued shall be deemed waived." There was a brief statement of the alleged errors, but nine of them were not argued. We have passed on this question many times in criminal cases. In State v. Mead, 237 Iowa 475, 476, 22 N.W.2d 222, we said: "The rule is well established that errors assigned which are not argued are deemed waived. State v. Harding, 204 Iowa 1135, 216 N.W. 642; State v. Neifert, 206 Iowa 384, 220 N.W. 32." In State v. Neifert, supra, we stated at page 385 of 206 Iowa: "Errors which are relied upon for reversal should be argued. If this is not done, the failure amounts to a waiver." We have, therefore, only given consideration to alleged errors argued by counsel for appellant.

The ruling of the trial court overruling the motion for new trial is sustained, the conviction approved, and the case affirmed.—Affirmed.

All JUSTICES concur.